IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN RICHARD PENA,<br><br>             Petitioner,<br><br>      vs.<br><br>JEFFREY A. BEARD,[1] Secretary,<br>California Department of Corrections and<br>Rehabilitation,<br><br>             Respondent. | No. 2:11-cv-01003-JKS<br><br>DISMISSAL ORDER |

      Melvin Richard Pena, a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254.  Pena is currently in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at Valley State Prison. Respondent has answered, and Pena has replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

      Pena was convicted by a San Joaquin County jury of failing to notify authorities of a change of address (former Cal. Penal Code § 290(f)).  After a separate bench trial in which he was found to have had three prior "strikes" (Cal. Penal Code §§ 667(b)-(i), 1170.12), in October 1998, the San Joaquin County Superior Court sentenced Pena to an indeterminate prison term of twenty-five years to life.  The California Court of Appeal affirmed Pena's conviction and sentence in an unreported decision.  The California Supreme Court denied review, and the

---

[1] Jeffrey A. Beard, Secretary, California Department of Corrections and Rehabilitation, is substituted for Matthew Cate. Fed. R. Civ. P. 25(d).

Supreme Court denied certiorari on October 10, 2000.[2]  Thereafter, spanning a period of ten years, Pena embarked upon a quixotic quest seeking post-conviction relief in the California courts.

On July 15, 2002, Pena, appearing through counsel, filed a petition for habeas relief in the San Joaquin County Superior Court, which was denied in an unreported reasoned decision on September 27, 2002.  On March 4, 2004, Pena, again appearing through counsel, filed a petition for habeas relief in the California Court of Appeal, Third Appellate District, which was denied in a published decision on September 1, 2004.[3]  The record does not reflect that Pena sought further review in the California Supreme Court.

On June 30, 2006, Pena, appearing through different counsel, filed a second petition for habeas relief in the San Joaquin County Superior Court, which was denied October 20, 2006.  Pena then filed a second counseled petition for habeas relief in the California Court of Appeal, which was denied on December 21, 2006.  The record does not reflect that Pena sought further review in the California Supreme Court.

Still undaunted, on October 5, 2009, Pena, with assistance of an inmate, filed a third petition for habeas relief in the San Joaquin County Superior Court, which was denied on December 7, 2009, citing *In re Clark*, 21 Cal. Rptr. 2d 509 (Cal. 1993).  The record does not reflect that Pena sought further review in the California Court of Appeal or Supreme Court.

On March 25, 2010, Pena, again with the assistance of an inmate, filed a petition for a writ of error coram nobis in the California Court of Appeal, which was denied April 29, 2010.

---

[2] *Pena v. California*, 531 U.S. 926 (2000).

[3] *In re White*, 18 Cal. Rptr. 3d 444 (Cal. Ct. App. 2004).

On October 6, 2010, Pena, with the assistance of an inmate, filed a petition for a writ of error coram nobis in the California Supreme Court, which was transferred by that court to the Court of Appeal on October 18, 2010.  After refiling, the Court of Appeal summarily denied relief without opinion or citation to authority, and the California Supreme Court denied review on January 12, 2011.

Pena filed his Petition for relief in this Court on April 12, 2011.  On June 27, 2011, after reciting the history in the California state courts, this Court entered an Order that Pena show cause why the Petition should not be dismissed as untimely ("OSC").[4]  Pena responded to that Order,[5] and, without addressing the timeliness of the petition or considering the merits of Pena's tolling defense, this Court ordered Respondent to file a response.[6]

## II.  GROUNDS RAISED/DEFENSES

In his Petition, Pena contends that: (1) because the information was constructively amended without notice, i.e., he was charged with a violation of Cal. Penal Code § 290(g)(3) but convicted of a violation of § 290(f), he was denied due process; and (2) the sentence imposed was cruel and unusual.  Respondent contends that the Petition is untimely.

## III.  TIMELINESS

In his Traverse, Pena does not address the timeliness issue.  Accordingly, the Court will refer to Pena's response to the OSC in addressing the timeliness issue.

---

[4] Docket No. 6.

[5] Docket No. 11.

[6] Docket No. 15.

The Supreme Court denied certiorari on October 10, 2000, and Pena's time to file for relief in this court began to run the following day, October 11, 2000. 28 U.S.C. § 2244 provides:

> (d) (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

As relevant to this case, the two provisions of § 2244 involved are (d)(1)(A) (date the judgment of conviction became final) and (d)(2) (exclusion of the time during which a State post-conviction proceeding is pending). An untimely petition is subject to dismissal.[7]

Pena did not file his first application for post-conviction collateral review until July 15, 2002, nearly two years after his conviction became final. Thus, unless the time was otherwise tolled, his Petition in this Court is untimely.

The statutory limitations period under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") may be tolled for equitable reasons.[8] To warrant equitable tolling, Pena "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently,

---

[7] *Day v. McDonough*, 547 U.S. 198, 201 (2006).

[8] *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010) (citation omitted).

and (2) that some extraordinary circumstance stood in his way."[9]  While a petitioner is required to pursue his rights diligently to warrant equitable tolling, the appropriate standard is "reasonable diligence," not "maximum feasible diligence."[10]  Pena contends that he is entitled to equitable tolling and therefore his Petition is timely.  The Ninth Circuit has recently stated the rule as follows:

> The general rule is that equitable tolling is available where the prisoner can show extraordinary circumstances were the cause of an untimely filing.  Under our cases, equitable tolling is available for this reason only when extraordinary circumstances beyond a prisoner's control make it *impossible* to file a petition on time and the extraordinary circumstances were the *cause* of [the prisoner's] untimeliness.[11]

According to Pena, the following events occurred (in chronological order):

<u>April 30, 2001</u>:  Pena retained Dangler as counsel to represent Pena in pursuing his state habeas proceedings.

<u>September 4, 2001</u>:  Pena's mother executed a legal services agreement and paid the retainer to Dangler.

<u>July 25, 2002</u>:  Dangler filed the first state habeas petition in the San Joaquin County Superior Court.

<u>March 5, 2004</u>:  Dangler filed the "first round" habeas petition in the California Court of Appeal.

---

[9] *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (citations omitted).

[10] *Holland*, 130 S. Ct. at 2565.

[11] *Ford v. Gonzalez*, 683 F.3d 1230, 1237 (9th Cir. 2012) (emphasis and alteration in the original) (internal quotation marks and citations omitted), *cert. denied, Ford v. Swarthout*, 133 S. Ct. 769 (2012).

<u>June 11, 2004</u>:  Dangler advised Pena in correspondence that he (Dangler) intended to retire shortly and that, with Pena's consent, another attorney, Rector, would take over Pena's case.  Pena consented.

<u>August 2, 2004</u>:  Rector acknowledged that he (Rector) was representing Pena.

<u>September 1, 2004</u>:  Court of Appeal denied Pena relief, holding:

> 8. *Dangler's Representation of Pena in This Court*
> On March 5, 2004, while the White petition was pending in this court but before he was served with the OSC in that proceeding, Dangler filed a petition for writ of habeas corpus on behalf of Melvin Richard Pena, in case No. C046271.  The petition and attached memorandum of points and authorities contain Dangler's signature.  They raise two contentions, both of which were rejected on Pena's direct appeal.  As described below, one part of the Pena petition plagiarizes from the appellant's opening brief drafted by another attorney in Pena's direct appeal, and another part of the petition relies on appellate authority that has been overruled.
> (a) *His Concession that the Pena Petition is Frivolous*
> During the hearing on the OSC in the White proceeding, this court served Dangler with an OSC why he should not be ordered to pay monetary sanctions for filing a frivolous petition on behalf of Pena.
> Dangler concedes that the contentions raised in the Pena petition are patently frivolous in that they indisputably have no merit, and further concedes that he can be ordered to pay monetary sanctions deemed appropriate by this court for his filing the frivolous petition.  He presented no evidence as to who drafted the petition and whether he read it before signing the petition.
> Dangler admits he was paid $7,250 to represent Pena in the habeas corpus proceedings.
> \* \* \* \*
> 2. *The Pena Petition is Patently Frivolous*
> Dangler concedes that the habeas corpus petition he filed on behalf of Melvin Richard Pena is patently frivolous.  Having reviewed the petition at length, we agree.  We write further to emphasize the especially egregious nature of this petition.
> Pena was convicted of failing to notify authorities of a change of address by a registered sex offender ([former] Pen.Code, § 290, subd. (f)).  The trial court found true three prior serious felony convictions under the "three strikes law," and sentenced Pena to 25 years to life.
> On February 25, 2000, this court affirmed the judgment on appeal, in an unpublished opinion, rejecting Pena's contentions that (1) Penal Code section 290 is unconstitutionally vague as applied to him, given the statute's failure to define "residence"; and (2) his sentence is cruel and unusual under the state and federal Constitutions.  (*People v. Pena* (Feb. 25, 2002, C031169) [nonpub.opn.].)

6

On May 10, 2000, the California Supreme Court denied Pena's petition for review, which raised the same two contentions rejected by this court (S087139).

On October 10, 2000, the United States Supreme Court denied Pena's petition for writ of certiorari, in which Pena again raised the same two contentions (99–10098).

On March 5, 2004, nearly six years after Pena's conviction, Dangler filed a habeas corpus petition in this court on Pena's behalf. The petition raises the same two contentions this court rejected more than four years ago, and which were denied review by the California Supreme Court and United States Supreme Court.

Even more troubling is that much of the petition's argument asserting that Penal Code section 290 is unconstitutional was copied nearly verbatim from Pena's opening brief on appeal. That brief, filed in Pena's direct appeal in this court, was written by Attorney Christopher Blake, who was appointed to represent Pena on appeal. Thus, for the most part, Dangler simply plagiarized Blake's argument from Pena's prior unsuccessful opening brief on appeal, changing the green cover used for an appellant's opening brief to the red cover used for a writ petition.

The petition's cruel and unusual punishment argument deviates somewhat from the analysis of Pena's appellant's opening brief, in that the petition rests much of its analysis on two Ninth Circuit Court of Appeals decisions that were reversed by the United States Supreme Court *before* Dangler filed the Pena habeas corpus petition in this court. (*Andrade v. Attorney General of State of California* (9th Cir.2001) 270 F.3d 743 (hereafter *Andrade*) rev. in *Lockyer v. Andrade* (2003) 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144; *Brown v. Mayle* (9th Cir.2002) 283 F.3d 1019, vacated and remanded *in Mayle v. Brown* (2003) 538 U.S. 901, 123 S.Ct. 1509, 155 L.Ed.2d 220, and then reversed by the Ninth Circuit in June 2003 in an unpublished opinion (see 66 Fed.Appx. 136).) Thus, it is apparent Dangler was unaware that the authority on which he relied had been overruled.

Any reasonable attorney familiar with the facts and the law would have recognized Dangler's contentions in the Pena petition are indisputably without merit.[12]

October 1, 2004  Pena's mother executed a "Flat Fee Retainer Agreement" with Rector.

August 8, 2005:  Rector advised Pena:

At this time, after reviewing all of the materials in your case, talking with those individuals involved and reviewing the current case law, I do not believe there is an issue I can file on your behalf. I was hopeful after our last visit, but after extensive

---

[12] *White*, 18 Cal. Rptr.3d at 462, 468 (omitted material, which pertains to other parties, is irrelevant to this case).

research and investigation, there is not enough evidence to support an argument for habeas corpus relief.[13]

Rector then provided approximately five pages of explanation concerning the reasons for his opinion.

September 14, 2005:  In correspondence to Pena, Rector informed Pena that Pena's materials were being forwarded to another attorney, "Martin."

September 26, 2005:  Pena corresponded with the California Court of Appeal expressing his frustrations with his dealings with Dangler.

September 27, 2005:  Rector returned the retainer he had received to Pena's mother.

November 2005:  Another attorney, Halstrom, was retained by Pena's mother to represent Pena.  Halstrom received the material from Rector at about that same time.

May 1, 2006:  Halstrom communicated with Pena informing him of the status of the proceedings and seeking additional documentation.

May 8, 2006:  Halstrom again corresponded with Pena, seeking additional information/documentation.

June 30, 2006:  Halstrom filed Pena's second habeas petition on Pena's behalf in the San Joaquin County Superior Court.

October 10, 2006:  Halstrom sent Pena correspondence updating him on the status of the second state habeas petition.

October 23, 2006:  In correspondence, Halstrom advised Pena that the San Joaquin County Superior Court had denied habeas relief.

---

[13] Docket 11-1 at 31.

<u>October 24, 2006</u>:  Halstrom informed Pena's mother of the denial of relief by the San Joaquin County Superior Court, and requested an additional retainer if the matter was to be pursued in the California Court of Appeal.

<u>August 2, 2007</u>:  Pena received correspondence from Halstrom concerning the denial of habeas relief by the California Court of Appeal.  In that correspondence, Halstrom referred to January correspondence that ostensibly informed Pena and Pena's mother of the decision of the Court of Appeal, and inquired about further pursuing the matter in the California Supreme Court.

<u>August 6, 2007</u>:  Halstrom sent Pena a copy of the Court of Appeal's order.

<u>August 10, 2007</u>:  Pena informed Halstrom that he (Pena) could no longer afford to retain Halstrom, and requested return of the case file.

<u>September 9, 2009; March 12, 2010; August 1, 2011</u>:  Follow-up correspondence to Hastrom requesting return of the record.  Pena contends he has never received the file.

Pena then states:

> The petitioner following dismissal of paid counsel sought out legal assistance from prison writ writers and other prison litigants.  He exceeded his time limitation to file petiotion [*sic*] for review with the California Supreme Court and could not convince any of the prison litigators that it wasn't a waste of their time to help him file a petition for writ of habes [*sic*] in the California Supreme Court because he would be time barred in the federal court.
> The petitioner began assembling documents that had been mailed to himself and mother by the various attorney's [*sic*] who had represented him.  Eventually petitioner requested his abstract of judgment and sentencing transcript from the Records Office at Mule Creek State Prison.  This was on or about September 2009.  Petitioner received the Abstract of Judgment approximately three weeks later.  At that time he noticed a discrepency [*sic*], the abstract of judgment listed his conviction as a violation of Penal Code § 290 subdivision (f), however, petitioner knew he had been charged with Penal Code § 290 subdivision (g)(3).
> On or about October 2009 petitioner requested a copy of information from the records office and received it shortly after.  The information charged him in count

9

three with the offense of Penal Code § 290 (g)(3). (See Exhibit P, CDC Form 602 Inmate/Parolee Appeal containing the abstract of judgment and information above.)[14]

October 20, 2009: After receiving a copy of his information from the prison's records office, Pena contacted an inmate writ writer concerning a perceived difference between the charge of which he had been convicted, Cal. Penal Code § 290(f), and the charge in the information, Cal. Penal Code § 290(g)(3).

November 25, 2009: Pena submitted a prison administrative appeal, CDC 602 "Inmate/Parolee Appeal Form" requesting a thorough review of his records to ascertain under which Penal Code Section he had been convicted. In his CDC, Pena complained:

> I was convicted and sentenced to a 25 to life prison term, under **penal code 290 (F)**. It is my understanding that my **'abstract of judgement',** reflects **"PC 290 (F)-conv sex ofdr fail to notify/of add change":** note the (F) is a capital 'F'. This is not a current /nor existing penal code statute, in the 2009, penal code book. (See exhibit 1). Also, a copy of my August 15, 2002, **'documentation hearing',** list offense code **"P290(g)(3) failure to register w/prior (3rd strike).** Is this penal code/or offense code a reflection of a different crime, other than whats [sic] stated on my 'abstract of judgement? (See exhibit 2).
> I'm seeking clarification from CDCR, concerning, whether I'm being wrongfully incarcerated under **P/C 290(F),** penal code statute that doesn't exist. The law clearly states that, "it is the warden's responsibility to insure [sic] that an inmates [sic] imprisonment is legal, and accurate, according to judicial law set forth under the laws of the State of California."[15]

March 25, 2010: Pena, again with the assistance of an inmate, filed a petition for a writ of error coram nobis in the California Court of Appeal, which was denied April 29, 2010.

May 12, 2010: Pena's administrative appeal was denied in a reasoned decision.

   III DIRECTOR'S LEVEL DECISION:  Appeal is denied.

---

[14] Docket No. 11 at 7.

[15] Docket No. 11-1 at 85 (bold print in the original, however, the original is also in upper case).

A. FINDINGS: The documentation and arguments presented are persuasive that the appellant has failed to support his appeal issue with sufficient evidence or facts to warrant modification of the previous level of review. The documentation attached to the appellant's appeal was reviewed at the Director's Level of Review regarding his claim in section "A" that he was convicted and sentenced under the wrong California Penal Code Section (PC). A[] [minute order] dated May 8, 1998, reflects that the appellant was found guilty of PC 290(F). An [abstract of judgment] dated October 1, 1998, reflects PC 290(F). A Court of Appeal document filed February 25, 2000, reflects a conviction of PC 290(f). A Documentation Hearing dated August 15, 2002, reflects that the appellant was convicted of PC 290(G)(3). Review of the 1997 PC only reflects the existence of PC 290(f). No PC 290(F) could be found. This information does not substantiate the appellant's claim that he has been wrongfully convicted and sentenced. The CDCR cannot change legal court documents. The appellant has the option available to him to petition the court to change the PC Section to what he believes is the correct section. The appellant has not provided evidence to support his claim that his commitment is inaccurate and illegal.[16]

October 6, 2010: Pena, with the assistance of an inmate, filed a petition for a writ of error coram nobis in the California Supreme Court, which was transferred by that court to the Court of Appeal on October 15, 2010. After refiling, the Court of Appeal summarily denied relief without opinion or citation to authority, and the California Supreme Court denied review on January 12, 2011.

The issue here is whether a sufficient portion of the period between the date Pena's conviction became final and the date his petition to this Court was filed was either statutorily or equitably tolled to account for all but one year of that time. For the reasons that follow, giving Pena every possible benefit of doubt, this Court must find that it was not.

On April 30, 2001, Pena retained counsel for the purpose of seeking post-conviction relief. On that date, 201 of his 365 days had lapsed, leaving Pena 164 days within which to file for relief in this Court. Pena's final application for post-conviction relief in the state courts was

---

[16] Docket No. 11-1 at 79-80.

denied on January 12, 2011, and he filed his Petition for relief in this Court on April 12, 2011, fifty-nine days later. Thus, unless all but 105 days of his time between April 30, 2001, and January 12, 2011, is tolled, Pena's Petition is untimely.

For the purposes of this analysis, this Court assumes, but does not decide, that Pena's time was either statutorily or equitably tolled between the date he claims he initially retained Dangler, April 30, 2001,[17] and the date he discharged Halstrom following denial of his second-round state habeas proceeding, August 10, 2007, due to the egregious conduct by counsel.[18]

Even assuming that the failure to have his file prevented him from filing for relief in this Court,[19] Pena failed to provide any reason for the two-year delay between the time he terminated counsel and requested return of his file and when Pena sent his first follow-up request on September 9, 2009. Other than contending that Halstrom, his last counsel, did not return his file, Pena does not indicate what other efforts he made during that period to obtain whatever documentation he needed to file his Petition in this Court. This Court also notes that the fact that Pena's case file is a matter of public record additionally indicates a lack of due diligence.[20] Moreover, Pena waited until September 2009 to seek information available from the prison's

---

[17] This Court uses the earlier date, not September 4, 2001, the date that counsel received the retainer.

[18] In so doing, this Court is not unmindful of the fact that, although Pena was unquestionably ill-served by Dangler, because the time that his first-round state habeas petitions were pending likely qualified for statutory tolling, it is irrelevant. This Court also assumes, but does not decide, that Halstrom's representation was sufficiently egregious to constitute malfeasance rather than mere "garden variety neglect." *See, e.g., Doe v. Busby*, 661 F.3d 1001, 1012 (9th Cir. 2011); *Porter v. Ollison*, 620 F.3d 952, 959-60 (9th Cir. 2010).

[19] *See Spitsyn v. Moore*, 345 F.3d 796, 800-01 (9th Cir. 2003).

[20] *See Ford*, 683 F.3d at 1237.

records office, which records provided Pena the information underlying his first ground. Thus, by his own admissions, Pena has failed to show that he either used due diligence or that, because of circumstances beyond his control, he was unable to timely file his Petition.

IV.  CONCLUSION AND ORDER

Because Pena has failed to show that the untolled time between the date Pena's conviction became final and the date he filed his Petition for relief in this Court did not exceed one year, Pena's Petition is untimely.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DISMISSED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[21] Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[22]

The Clerk of the Court is to enter judgment accordingly.

Dated: August 6, 2013.

                                              /s/ James K. Singleton, Jr.
                                              JAMES K. SINGLETON, JR.
                                              United States District Judge

---

[21] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).

[22] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.